IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUIS A. LOMELI, **Plaintiff,** v. ANTHONY WILLS, C/O SCHANZ, C/O BOHNERT, C/O RATHKE, C/O ANTHONY JONES, C/O TERRANCE JACKSON, LIEUTENANT JOSHUAA SCHOENBECK, and LIEUTENANT PRIDDY, **Defendants.** | Case No. 23-cv-2518-MAB |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Luis A. Lomeli, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Lomeli's original Complaint (Doc. 1), alleging due process violations in a disciplinary hearing, was dismissed without prejudice for failure to state a claim (Doc. 9). Lomeli was granted leave to file an Amended Complaint. On December 14, 2023, Lomeli filed his Amended Complaint (Doc. 12). He again alleges Fourteenth Amendment due process violations in two disciplinary hearings.

1

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Amended Complaint

In his Amended Complaint, Lomeli makes the following allegations: On August 27, 2022, while housed in Menard's East Cellhouse, Cell #422, the tactical team removed Lomeli and his cellmate from their cell (Doc. 12, p. 8). The tactical team then conducted a search of Lomeli's cell. After the search, both Lomeli and his cellmate were placed in North 2 Restrictive Housing (*Id.*). Later that evening, Lomeli received an Investigative Disciplinary Report informing him that he was on investigative status. On September 16, 2022, Lomeli received a disciplinary ticket charging him with a conspiracy involving drugs and drug paraphernalia (*Id.*). The ticket noted that during the August 27 search of Lomeli's cell, Lieutenant Priddy located a handwritten note in the bottom bunkbed's mattress (*Id.* at p. 9). Lomeli was known to sleep in that bed and the note was attributed to Lomeli. The note, written in Spanish, but translated by Correctional Officer ("C/O")

---

[1] The Court has jurisdiction to screen the Amended Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and Wexford Health Sources, Inc., to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these two entities.

Martinez (a state approved translator) contained information about obtaining drugs and drug paraphernalia (*Id*.).

After Lomeli received the disciplinary ticket, he submitted a written request to the Adjustment Committee seeking video footage of Priddy's search and subsequent discovery of the note in Lomeli's mattress, a copy of the note, and C/O Martinez's translator credentials (*Id*.). Lomeli noted that a surveillance camera was directly across from his cell and should have captured the search of his cell. On September 21, 2022, Lomeli went before the Adjustment Committee, which consisted of members Lieutenant Joshuaa Schoenbeck and C/O Anthony B. Jones (*Id*. at p. 10). Lomeli provided the committee with a handwritten copy of his requests. Schoenbeck also confirmed receipt of Lomeli's original requests. Schoenbeck denied Lomeli's requests. Lomeli requested additional time for the committee to produce the video, conduct a handwriting analysis of the note, and produce C/O Martinez's credentials, but Schoenbeck refused the request (*Id*.).

The Adjustment Committee proceeded with the hearing and found Lomeli guilty of the charges (*Id*.). He was disciplined with 3 months in segregation and 3 months commissary restrictions (*Id*. at pp. 11, 26).

On September 22, 2022, Lomeli received a second disciplinary ticket (*Id*. at p. 11). This ticket alleged that during the search of Lomeli's cell, Lieutenant Priddy also discovered a small bag containing a white, powdery substance (*Id*.). The bag was located in the same mattress as the note (*Id*. at p. 12). Internal Affairs tested the substance and it yielded a positive response for drugs. The substance was then submitted to the Illinois

State Police Crime Lab for further testing (*Id.*). On September 20, 2022, officials at Menard received the Crime Lab's drug chemistry report, finding that the substance was Gabapentin (*Id.*). Lomeli was charged with drug possession (*Id.*).

Lomeli again submitted a written request for physical evidence to the Adjustment Committee (*Id.*). He specifically requested video footage of the search of his cell (*Id.* at p. 13). On September 28, 2022, Lomeli went before the Adjustment Committee which included members Schoenbeck and C/O Terrance T. Jackson (*Id.*). Lomeli presented the committee with a copy of his request for evidence and Schoenbeck acknowledged receiving the original request. But Schoenbeck denied Lomeli's request for video footage of the search (*Id.*). Lomeli asked for a continuance in order that the video footage could be obtained and Schoenbeck denied that request. The Adjustment Committee found Lomeli guilty of the drug offense and sentenced him to 6 months in segregation, 6 months commissary restrictions, and 6 months visitation restrictions, to run consecutive to his prior discipline (*Id.* at pp. 14, 28).

As a result of the sentence, Lomeli spent a total time of 9 months in segregation (*Id.* at p. 14). He was housed in segregation from August 27, 2022 until May 8, 2023 (*Id.* at p. 17). When Lomeli was first placed in his cell, he noticed feces on the walls and a strong smell of urine (*Id.*). Lomeli never received cleaning supplies for his cell, nor was he allowed any laundry services for his clothing (*Id.*). His cell also lacked hot water (*Id.*). The gallery showers flooded often and caused flooding throughout the gallery (*Id.*). Lomeli experienced constant banging, yelling, and screaming from other inmates on the gallery that prevented him from sleeping (*Id.* at p. 18).

4

Lomeli alleges that his due process rights were violated during the disciplinary hearings for the two disciplinary tickets. Despite submitting advanced requests for documentary evidence, including video footage of the searches and a copy of the handwritten note, Lomeli alleges that his requests were denied (*Id.* at pp. 14-15). He alleges that Lieutenant Priddy wrote a false disciplinary ticket and Lomeli was prevented from demonstrating that no drugs or note were ever located by Priddy (*Id.* at p. 15). Lomeli also alleges that he was improperly charged twice and disciplined with too much time in segregation, a violation of IDOC rules. Specifically, Lomeli alleges that the discipline entered against him was a violation of IDOC Directive Rule 504.100 that puts limits on the amount of discipline an inmate can receive when multiple offenses arise out of a single incident (*Id.*). Lomeli alleges that the maximum penalty he could receive was the maximum penalty for the most serious offense (*Id.*). Thus, Lomeli alleges that he should have only served 6 months in segregation rather than the 9 months he served (*Id.*).

## Discussion

Based on the allegations in the Amended Complaint, the Court designates the following counts:

**Count 1:** **Fourteenth Amendment due process claim against Anthony Wills, C/O Schanz, C/O Bohnert, C/O Rathke, C/O Anthony Jones, C/O Terrance Jackson, Lieutenant Joshuaa Schoenbeck, and Lieutenant Priddy for denying Lomeli access to documentary evidence during the disciplinary hearing.**

**Count 2:** **Eighth Amendment conditions of confinement claim against Anthony Wills, C/O Schanz, C/O Bohnert, C/O Rathke, C/O Anthony Jones, C/O Terrance Jackson, Lieutenant Joshuaa Schoenbeck, and Lieutenant Priddy for**

> **subjecting Lomeli to unsanitary conditions in disciplinary segregation.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

**Count 1**

At this stage, Lomeli states a Fourteenth Amendment due process claim against Joshuaa Schoenbeck, Anthony Jones, Terrance Jackson, and Lieutenant Priddy. "The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown,* 856 F.3d 508, 524 (7th Cir. 2017). When an inmate raises a procedural due process claim, the Court undertakes a two-part analysis. *Id.* The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)). Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Lomeli alleges that he spent 9 months in segregation in unsanitary conditions. His cell was dirty, he lacked access to laundry services for his clothing, and he lacked hot water. He also experienced flooding in the gallery and constant screaming and yelling from other inmates which caused him psychological stress (Doc. 12, pp. 17-18). His amount of time in segregation and the conditions he experienced could amount to a deprivation of a liberty interest.

As to the Adjustment Committee members, including Joshuaa Schoenbeck, Anthony Jones, and Terrance Jackson, Lomeli alleges that he was denied access to documentary evidence during his disciplinary hearing. *Wolf*, 418 U.S. at 566 (due process protections require that an inmate be allowed to "present documentary evidence when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"); *Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir. 2002) (the prison "may not arbitrarily refuse to consider exculpatory evidence"); *Keller v. Cross*, 603 F. App'x 488, 490 (7th Cir. 2015) ("If timely requested, material exculpatory evidence must be disclosed in prison disciplinary proceedings."). Lomeli alleges that this evidence, including video footage of the search and a copy of the note, would have demonstrated that the materials were not his and that Lieutenant Priddy issued a false disciplinary ticket. Further, Lomeli alleges that he requested the evidence prior to and at the hearing but was still denied

7

access to evidence that would prove his innocence. *Keller*, 603 F. App'x at 490 ("inmates must request the evidence before or at the hearing, since due process does not require hearing officers to consider evidence that could have been but was not presented at the hearing") (citing *Piggie*, 277 F.3d at 925). Thus, Lomeli states a due process claim against the Adjustment Committee members at this stage.

Lomeli also states a due process claim against Lieutenant Priddy who he alleges issued a false disciplinary ticket. Standing alone, the receipt of a false disciplinary ticket does not give rise to a due process violation. This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), *aff'd*, 70 F.3d 117 (7th Cir. 1995) (citations omitted). *See also Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). But because Lomeli has alleged that he was denied due process protections, his claim against Priddy cannot be dismissed at this time.

Lomeli fails, however, to state a claim against the remaining defendants. Although he also lists Anthony Wills, C/O Schanz, C/O Bohnert, and C/O Rathke in the case caption, he fails to include any allegations against them in his statement of claim. There are simply no allegations to suggest that these individuals participated in the search of Lomeli's cell or were members of the adjustment committee. Thus, Count 1 is **DISMISSED without prejudice** as to Anthony Wills, C/O Schanz, C/O Bohnert, and C/O Rathke.

8

Further, to the extent that Lomeli seeks to allege a claim regarding violations of the administrative code in his sentencing, he likewise fails to state a claim. Lomeli alleges that he improperly received 9 months in segregation when his discipline should have been limited to the maximum penalty of the most serious offense, in Lomeli's case that would have limited his discipline to 6 months in segregation. Lomeli alleges that the defendants violated IDOC directives and rules when they combined his segregation sentence. But the violation of an administrative directive does not amount to a constitutional violation. *Whitman v. Nesic*, 368 F.3d 931, 935 n. 1 (7th Cir. 2004); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("[Section] 1983 protects plaintiffs from constitutional violations, not violations of state laws or…departmental regulations"). To the extent Lomeli alleges that the defendants violated IDOC rules and regulations, those claims are **DISMISSED without prejudice**.

**Count 2**

Lomeli also fails to state a claim against any defendant regarding his conditions of confinement. Although Lomeli alleges that he faced unconstitutional conditions of confinement in segregation, he fails to allege that he made any of the named defendants aware of the conditions that he faced. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety"). Nor are there any allegations to suggest that these individuals acted with deliberate indifference. Thus, Count 2 is **DISMISSED without prejudice**.

**Disposition**

For the reasons stated above, Count 1 shall proceed against Joshuaa Schoenbeck, Lieutenant Priddy, C/O Anthony Jones, and C/O Terrance Jackson. Count 2 and the claims against Anthony Wills, C/O Schanz, C/O Bohnert, and C/O Rathke are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Joshuaa Schoenbeck, Lieutenant Priddy, C/O Anthony Jones, and C/O Terrance Jackson: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Lomeli. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Lomeli, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Lomeli, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Lomeli is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 3/25/2024**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**