# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUIS A. LOMELI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-2518-MAB |
| | ) |
| ANTHONY JONES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Anthony Jones, Terrance Jackson, Joshua Schoenbeck, and Aaron Priddy's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 28). For the reasons set forth below, Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is DENIED (Doc. 28).

### BACKGROUND

Plaintiff Luis Lomeli filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was incarcerated at Menard Correctional Center (*see* Docs. 1, 12, 13). Plaintiff's Amended Complaint (Doc. 12) alleges Fourteenth Amendment due process violations related to two disciplinary hearings that occurred in September 2022 (*see* Doc. 13 at pp. 2-5).

Specifically, Plaintiff claims that his cell was searched by prison officials on August 27, 2022 (*Id.* at p. 2). After the search, Plaintiff was placed on investigative status and moved to restrictive housing (*Id.*). Twenty days later, on September 16, 2022, Plaintiff

received a Disciplinary Report (hereinafter, the "First Ticket") charging him with "601/203: Conspiracy to: Drugs and Paraphernalia." (Doc. 28-2, pp. 51-52). The First Ticket stated that Lieutenant Priddy discovered a handwritten note in what was known to be Plaintiff's mattress during the search on August 27, 2022 (*Id.*). The note, which was translated from Spanish to English, was found to contain information about obtaining drugs and drug paraphernalia (*Id.*) A hearing on the First Ticket was held before Adjustment Committee members Joshua Schoenbeck and Anthony Jones on September 21, 2022 (Doc. 12 at pp. 26-27). At that time, Plaintiff was found guilty of the charged conspiracy offense and sentenced to three months of segregation and three months of commissary restrictions (*Id.*).

One day later, on September 22, 2022, Plaintiff received a second Disciplinary Report (hereinafter, the "Second Ticket") charging him with "203: Drugs and Drug Paraphernalia." (Doc. 28-2 at pp. 53-54).[1] The Second Ticket stated that during the search of Plaintiff's cell on August 27, 2022, Lieutenant Priddy found an unknown white substance in a small bag located in Plaintiff's mattress, which was later identified as Gabapentin (*Id.*). A hearing on the Second Ticket was held before Adjustment Committee members Joshua Schoenbeck and Terrance Jackson on September 28, 2022 (Doc. 12 at pp. 28-29). Plaintiff was found guilty of the charged drug possession offense and sentenced to six months of segregation, six months of commissary restrictions, and six months of

---

[1] The Second Ticket states that the Illinois State Police Crime Lab returned a drug chemistry report on September 20, 2022 (Doc. 28-2 at p. 54). This explains the more than three-week delay between Plaintiff's cell being searched and the issuance of the Second Ticket. However, it does raise questions as to why Plaintiff's Second Ticket was issued one day after the hearing on his First Ticket, when the drug chemistry report's findings were known prior to the hearing.

contact visits restrictions (*Id.*). Plaintiff's six-month segregation sentence ran consecutively to his three month segregation sentence, meaning he was sentenced to a total of nine months in segregation as a result of the charges stemming from the cell search conducted on August 27, 2022 (Doc. 13 at p. 4).

Plaintiff filed his Amended Complaint in December 2023 (Doc. 12).[2] The Court conducted a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A in March 2024 (Doc. 13). Ultimately, Plaintiff was permitted to proceed on the following claim:

> **Count 1:** Fourteenth Amendment due process claim against [Defendants Jones, Jackson, Schoenbeck, and Priddy] for denying [Plaintiff] access to documentary evidence during the disciplinary hearing.

(*Id.* at pp. 5-9).[3]

On September 30, 2024, Defendants filed the instant Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 28), along with several supporting exhibits (*see* Docs. 28-1, 28-2, 30). Thereafter, Plaintiff timely filed a Response in opposition to Defendants' motion (Doc. 35) and Defendants filed a Reply in support of their motion (Doc. 36).

---

[2] Plaintiff's original Complaint (Doc. 1) was dismissed without prejudice in October 2023 for the failure to state a claim (Doc. 9).
[3] Plaintiff's Amended Complaint also named Anthony Wills, C/O Schanz, C/O Bohnert, and C/O Rathke in Count 1 (*see* Doc. 12). However, those Defendants were dismissed in the Court's Merit Review Order because the Amended Complaint failed to include any allegations against them (Doc. 13 at p. 8). Similarly, Plaintiff's Amended Complaint included a conditions of confinement claim that was dismissed in the Court's Merit Review Order for the failure to state a claim (Doc. 13 at p. 9).

### LEGAL STANDARDS

*I.   Summary Judgment Standards*

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). This means courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

*II.  Exhaustion Requirements*

As outlined in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Furthermore, the failure to exhaust administrative remedies is an affirmative defense that the defendants carry the burden of proving. *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 533-34.

### III.   IDOC Grievance Procedures

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq*. (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the

IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). However, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Additionally, if an inmate appeals the warden's decision on an emergency grievance, the ARB is also required to expedite processing of the emergency grievance. *Id.* at § 504.850(f).

## DISCUSSION

### I.  *Plaintiff's Grievances*

Plaintiff filed two grievances in October 2022 that are relevant to Defendants' motion.[4] Plaintiff filed Grievance No. 207-10-22 on October 16, 2022, and timestamps from Menard's Grievance Office indicate it was received two days later (Doc. 28-2 at pp. 15-26; *see also* Doc. 12 at pp. 43-54). In Grievance No. 207-10-22, Plaintiff challenged the disciplinary tickets he received, and numerous aspects of the process related to those tickets (*see generally* Doc. 28-2 at pp. 15-26). Among other complaints, Plaintiff challenged

---

[4] Typically, when reviewing multiple grievances, the Court fully details the substance and procedural history of the first relevant grievance before doing the same for each later-filed grievance. Here, however, the Court summarizes the two applicable grievances in purely chronological order because the way in which Plaintiff's grievances were processed is relevant to his exhaustion efforts.

Defendant Priddy's discovery of the note and white powder within his cell, and the lack of evidence and procedure related to those discoveries (*see, e.g.*, *Id.* at pp. 21, 26). Plaintiff then challenged the due process he received at both Adjustment Committee hearings, directly naming and grieving the actions of Defendant Schoenbeck on multiple occasions (*see, e.g.*, *Id.* at pp. 24-25).[5] Finally, in the relief requested section, Plaintiff sought the expungement of both tickets due to "the many violations to grievant's due process and … staff misconduct." (*Id.* at p. 15).

Thereafter, Plaintiff filed Grievance No. 276-10-22 on October 24, 2022 (*Id.* at pp. 42-49). That grievance was marked as received one day later (*Id.*). Additionally, timestamps from Menard's Grievance Office demonstrate that Plaintiff attached the First and Second Tickets to that grievance (*Id.* at pp. 51-54). Notably, at the top of Grievance No. 276-10-22, Plaintiff wrote that the nature of his grievance involved "procedural error/misconduct, staff misconduct." (*Id.* at p. 44). Moreover, Plaintiff contended that the First Ticket "stands unsubstantiated … due to procedural error and staff misconduct[.]" (*Id.* at p. 45). Plaintiff then challenged numerous alleged procedural errors including: receiving two tickets and two segregation sentences for one incident, not receiving either ticket within twenty days of the cell search, not being allowed to participate in the preparation of the disciplinary tickets even though he "was available to participate in the proceeding," and not receiving copies of the Adjustment Committee Summaries. (*Id.* at

---

[5] In this regard, Defendants provided an affidavit from Jeffrey Olson, a Grievance Officer at Menard, which states that Grievance No. 207-10-22 concerns the First and Second Tickets and includes "allegations that the discipline was improper in violation of DR 504 and his due process rights, and claims the hearing was improper, mentions Defendant Schoenbeck and Defendant Priddy[.]" (Doc. 28-2 at p. 4).

pp. 45-49). In the relief requested section, Plaintiff sought all charges related to the two tickets be expunged, his immediate release from segregation, and "proper training to officers to eliminate staff misconduct and procedural error and misconduct." (*Id.* at p. 44).

Several months later, on January 30, 2023, the Grievance Officer reviewed Grievance No. 276-10-22 (*Id.* at p. 42). The Grievance Officer indicated that she contacted the Adjustment Committee and the "Committee advised that the hearing was conducted in accordance with DR 504.80 on 9/21/2022 & 9/28/2022. Individual in custody was permitted to make statements in his defense and offender pled NOT GUILTY to both tickets." (*Id.*). The Grievance Officer then noted that the Adjustment Committed found Plaintiff guilty of both tickets and she explained that "one ticket was conspiring about obtaining drugs and the other was an actual finding of drugs." (*Id.* at p. 43). Consequently, the Grievance Officer recommended that Grievance No. 276-10-22 be denied (*Id.* at p. 42). The Warden concurred in her recommendation one day later (*Id.*).

Plaintiff then appealed Grievance No. 276-10-22 to the ARB, which received his appeal on February 21, 2023 (*see* Doc. 30[6]). However, on March 10, 2023, the ARB returned Grievance No. 276-10-22 to Plaintiff as "not submitted in the timeframe outlined in Department Rule 504; therefore this issue will not be addressed further." (*Id.*).[7]

---

[6] The cited document is an affidavit made by Paige Long, a Chairperson at the ARB (*see* Doc. 30). Both Ms. Long's affidavit and Defendants' own filings seem to indicate that additional ARB records were meant to be attached to Defendants' motion or Ms. Long's affidavit (*Id.*) (citing specific Bates-stamped pages within Exhibit 3, which, as far as the Court is aware, were not actually provided to the Court in Exhibit 3 or any of Defendants' other exhibits). Nevertheless, this omission is of no consequence because both parties agree that Plaintiff appealed Grievance No. 276-10-22 to the ARB within the allotted timeframe (*see* Doc. 35; Doc. 28 at p. 6) (Defendants state, "[i]t should be noted that while the ARB deemed Grievance # 276-10-22 untimely submitted, that does not appear to be the case.").

[7] Both Plaintiff and Ms. Long allude to an additional letter or resubmission of Grievance No. 276-10-22 which Plaintiff sent to the ARB after its initial denial (*see, e.g.*, Doc. 30 at p. 4; Doc. 35 at p. 5). However, the

Finally, Grievance No. 207-10-22 was reviewed by the Grievance Officer on May 23, 2023, more than seven months after it had been received and more than two months after Plaintiff's later-filed grievance was denied by the ARB (Doc. 28-2 at p. 14). Crucially, the Grievance Officer recommended Grievance No. 207-10-22 be denied because it was duplicative of Grievance No. 276-10-22 (*Id.*). The Warden concurred in the Grievance Officer's recommendation on May 26, 2023 (*Id.*). Plaintiff concedes that he did not appeal the denial of Grievance No. 207-10-22 to the ARB (Doc. 35 at p. 6).[8]

II. *Analysis*

Defendants argue they are entitled to summary judgment based upon Plaintiff's failure to exhaust his administrative remedies because: (1) Grievance No. 276-10-22 neither identifies them nor Plaintiff's claim; and (2) Grievance No. 207-10-22 was not appealed to the ARB, and therefore, not fully exhausted (*see generally* Doc. 28). The Court is not persuaded by either contention.[9]

---

Court can make do without that follow-up letter because Plaintiff's administrative remedies were exhausted when the ARB erroneously denied his grievance and indicated that the "issue will not be addressed further." (Doc. 30 at p. 4).

[8] However, as will be discussed further below, Plaintiff's failure to appeal Grievance No. 207-10-22 is of no consequence. *See infra* pp. 13-16.

[9] Defendants' Reply in Support argues their motion should also be granted because Plaintiff failed to comply with SDIL Local Rule 56.1 by responding to each factual assertion contained in Defendants' Statement of Undisputed Material Facts (Doc. 36 at pp. 1-2; *see also* Doc. 28 at pp. 2-3). While it is true that Defendants notified Plaintiff of his obligations under Federal Rule of Civil Procedure 56 (Doc. 29) and Plaintiff's Response did not comply with Local Rule 56.1 (*see* Doc. 35), that Notice did not contain a clear reference to the requirements unique to Local Rule 56.1 that Defendants now cite (*see* Doc. 29). Therefore,

> Given that the consequences of failing to comply with Local Rule 56.1 are so dire, and considering the Seventh Circuit's mandate in *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), the Court finds that leniency is appropriate here where Defendants' Rule 56 notice did not sufficiently address the importance of complying with Local Rule 56.1's requirements. Thus, the Court will not penalize Plaintiff for failing to comply with the specifications set forth in Local Rule 56.1(b). The Court, however, will not excuse noncompliance with

As an initial matter, the Court finds the ARB erred by returning Grievance No. 276-10-22 as untimely, thereby rendering the final stage of the administrative review process unavailable to Plaintiff. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("[A] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance[.]"). Here, the records demonstrate (and Defendants concede) that Plaintiff's appeal to the ARB was received twenty days after the Warden's decision—well within the 30-day timeframe set by § 504.850(a). Therefore, Grievance No. 276-10-22 was timely filed and procedurally exhausted. *See, e.g.*, *Tuduj v. Siddiqui*, 20-CV-924-DWD, 2023 WL 8235751, at *4 (S.D. Ill. Nov. 28, 2023) (holding that the prison grievance office and the ARB both erred when they incorrectly rejected a grievance as untimely, thereby demonstrating the grievance was pursued to the fullest extent possible); *Ezell v. Neibel*, 3:21-CV-01434-SMY-RJD, 2024 WL 4111769, at *5 (S.D. Ill. Aug. 19, 2024) (the administrative process was rendered unavailable to an inmate when it was erroneously determined that the grievance was filed out of timeframe).

Additionally, the Court rejects Defendants' contention that Grievance No. 276-10-22 failed to identify Plaintiff's claim against Defendants. Plaintiff's instant claim is that Defendants failed to provide him adequate due process regarding the two disciplinary

---

Federal Rule of Civil 56, such as failing to properly support or address a fact as required by Rule 56(c).

*Harris v. David*, 21-CV-440-DWD, 2025 WL 18667, at *3 (S.D. Ill. Jan. 2, 2025). Furthermore, several of Defendants' "Undisputed Material Facts" are actually legal conclusions (*see, e.g.*, Doc. 28, p. 3, ¶ 11), which the Court disregards regardless of whether Plaintiff specifically disputed those assertions. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 at fn. 2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts."); *Friedman v. City of Highland Park*, 68 F. Supp. 3d 895, 901 (N.D. Ill. 2014) ("To the extent that a purported fact is merely a legal conclusion, it is disregarded.").

hearings that occurred in September 2022. Relatedly, Grievance No. 276-10-22 grieves procedural errors and staff misconduct regarding the two tickets and discipline he received. Therefore, while Grievance No. 276-10-22 may not repeat Plaintiff's instant claim verbatim, it still provided adequate notice to prison officials of Plaintiff's due process concerns by challenging the disciplinary proceedings, supporting evidence, and resulting discipline. *See Wilson v. Holloway*, 19 C 8114, 2022 WL 444113, at *2 (N.D. Ill. Feb. 14, 2022) (rejecting the defendant's argument "that the grievance's wording match that of the complaint" and explaining that the PLRA has no such requirement); *Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024) ("In other words, a grievance must contain enough information about who caused the grieved of problem so that a prison can properly 'investigate and resolve grievances.'").

Moreover, Defendants' attempts to draw a distinction between disciplinary hearing processes and ticketing processes are contradicted by the Grievance Officer's response, which clearly discussed the due process afforded to Plaintiff at the disciplinary hearings (*see* Doc. 28-2 at pp. 42-43). For instance, the Grievance Officer identified the Adjustment Committee, solicited their input, and then pointed out that Plaintiff "was permitted to make statements in his defense" at the hearings (*Id.*). In other words, the Grievance Officer's response demonstrates that she understood Grievance No. 276-10-22 to be grieving the entire disciplinary and hearing process, and not just the search or underlying tickets (*Id.*). Consequently, Defendants' arguments that Plaintiff's claim was not identifiable in his grievance are directly contradicted by the Grievance Officer's response which specifically identified and addressed that claim.

In that regard, the Court also rejects Defendants' contention that Grievance No. 276-10-22 did not identify them by name or description. Admittedly, Grievance No. 276-10-22 did not directly name Defendants. However, by challenging the actions of the Adjustment Committee, and the Grievance Officer then soliciting feedback from the Adjustment Committee, there can be no question that Grievance 276-10-22 adequately identified the Adjustment Committee as its target. And pertinently, Defendants Schoenbeck, Jones, and Jackson were the three Adjustment Committee members involved in the hearings and listed on the Adjustment Committee Final Summary Reports, which were attached to Plaintiff's Amended Complaint (*see* Doc. 12 at pp. 26-29).

Similarly, the Court finds Plaintiff's grievance sufficiently identified Defendant Priddy. Namely, in Grievance No. 276-10-22, Plaintiff challenged the actions of the officers who searched his cell and then attached both tickets to the grievance (*see* Doc. 28-2 at pp. 51-54). And dispositively, both tickets list Defendant Priddy as the officer who discovered the note and white powder in Plaintiff's cell (*Id.*). Therefore, "[b]y submitting his disciplinary ticket along with his grievance form, Plaintiff gave the IDOC ample information to know which correctional officers [he was challenging]. That is all the PLRA requires." *Hall v. Maue*, 12-CV-0204-MJR-SCW, 2014 WL 722399, at *3 (S.D. Ill. Feb. 25, 2014). *See also Keith Allen v. Wexford Health Sources, Inc., et al.*, 23-CV-3775-DWD, 2025 WL 1909465, at *5 (S.D. Ill. July 11, 2025) ("Florence's role could have been easily identified by a review of Plaintiff's medical records. The Seventh Circuit and other judges in this District have found a grievance to be sufficient to exhaust a claim if it is sufficiently

detailed for the prison to identify and remedy an issue, regardless of if it precisely names a particular medical provider or employee."); *Ezell v. Neibel*, 3:21-CV-01434-SMY-RJD, 2024 WL 4111769, at *5 (S.D. Ill. Aug. 19, 2024) ("Had any investigation been done at the time Plaintiff filed the grievance, the video records and tact team rosters could have been employed to identify the officers involved. The Court finds that Plaintiff's grievance fulfilled the requirements set forth in 20 Ill. Admin. Code § 504.810(c)."). In addition, the Grievance Officer's response directly references both tickets, thereby demonstrating that the Grievance Officer knew of Defendant Priddy (or at the very least, could have readily identified him) (*see* Doc. 28-2 at p. 43).

Nevertheless, even if Grievance No. 276-10-22 had not sufficiently identified Plaintiff's claim and/or each Defendant, the Court finds Plaintiff exhausted all available remedies for Grievance No. 207-10-22 given the specific circumstances presented in this case. Again, Plaintiff filed Grievance No. 207-10-22 before he filed Grievance No. 276-10-22. However, he did not receive a response to Grievance No. 207-10-22 for over seven months (Doc. 28-2 at p. 14). That alone likely rendered any further stages of the exhaustion process unavailable to Plaintiff for Grievance No. 207-10-22. *See, e.g.*, *Bentley v. Morris*, 3:23-CV-48-MAB, 2025 WL 894947, at *4 (S.D. Ill. Mar. 24, 2025) (Given the eight month delay in responding to the plaintiff's grievance "Defendants' failure to provide a justification for it (or to provide other documents demonstrating that prison officials updated Plaintiff as to the status of this grievance), the Court will treat Grievance No. 57-1-22 as having been procedurally exhausted.").

But even if one were to argue that a more than seven-month delay in responding to a grievance does not render the administrative review process unavailable, the timing and contents of the prison officials' responses to Plaintiff's grievances most certainly did. *See Reid v. Balota*, 962 F.3d 325, 330 (7th Cir. 2020) ("When the warden and the Administrative Review Board returned that grievance to him, neither mentioned a pending standard grievance or an ongoing Internal Affairs investigation. Based on those responses, it would have been impossible for Mr. Reid to know whether the grievance officer was still processing his standard grievance."). Put simply, Plaintiff filed Grievance No. 207-10-22 over a week before filing Grievance No. 276-10-22. Yet, he received a response to Grievance No. 276-10-22 and appealed it to the ARB long before he heard back on his earlier-filed grievance. Under such circumstances, the administrative review process had been rendered unavailable as to Grievance No. 207-10-22 because the administrative scheme had become so confusing that no ordinary prisoner would know how to navigate it. *See Tatum v. Williams*, 21-CV-1697-DWD, 2024 WL 328773, at *4 (S.D. Ill. Jan. 29, 2024), *aff'd*, 24-1305, 2025 WL 1444418 (7th Cir. May 20, 2025) ("A remedy is 'unavailable' if: an administrative scheme is so opaque or confusing that no ordinary prisoner can discern or navigate it; an inmate's access to an administrative scheme was impeded by machination, misrepresentation, or intimidation from prison officials; or, if a procedure is available but it is a dead-end because officials are repeatedly unwilling to provide the relief sought."). To make matters even more confusing, when Plaintiff finally received a response to Grievance No. 207-10-22, it was denied as duplicative of his later-filed grievance, which was then fully exhausted (*see* Doc. 28-2 at p. 14).

Yet, Defendants now argue that Grievance No. 207-10-22 wasn't duplicative of Grievance No. 276-10-22 (which Defendants have conceded, at least in part, was procedurally exhausted) and Plaintiff needed to fully exhaust Grievance No. 207-10-22 before filing suit. Defendants cannot have it both ways. If, as Defendants now contend, Grievance No. 207-10-22 was not duplicative of Grievance No. 276-10-22, "then the grievance office made the grievance process unavailable to [Plaintiff] by improperly rejecting his additional grievances as duplicative[.]" *Fultz v. Cambe*, 3:20-CV-259-DRL-MGG, 2022 WL 1404658, at *2 (N.D. Ind. May 3, 2022). *See also Moore v. Illiois Dep't of Corr.*, 3:19-CV-01206-MAB, 2021 WL 308805, at *9 (S.D. Ill. Jan. 29, 2021) ("A counselor incorrectly categorizing a different grievance as a duplicate seems to be a very fine example of a prison official failing to respond to a properly filed grievance."). This conclusion is exacerbated by the unique scenario found here wherein Plaintiff fully exhausted his later-filed grievance prior to his earlier-filed grievance being denied as duplicative.[10] Conversely, if Grievance No. 207-10-22 was duplicative of Grievance No. 276-10-22 (as prison officials indicated to Plaintiff, but Defendants now dispute), then Mr. Olson's concessions that Grievance No. 207-10-22 identified Plaintiff's instant claim, the Adjustment Committee, and Defendant Priddy, are fatal to their current identification-

---

[10] In other words, by the time Grievance No. 207-10-22 was denied as duplicative, Plaintiff had already appealed Grievance No. 276-10-22 through each stage of the administrative review process – thereby exhausting his administrative remedies as to the issues raised in that grievance. Therefore, when Grievance No. 207-10-22 was denied as duplicative of Grievance No. 276-10-22, it would be natural to assume that the issues raised in Grievance No. 207-10-22 (which prison officials characterized as duplicative) were fully exhausted and no further action was required.

based arguments (*see* Doc. 28-2 at p. 4).[11] Therefore, under either scenario, Defendants' contentions must fail. *See Dole*, 438 F.3d at 809 ("Prison officials may not take unfair advantage of the exhaustion requirement[.]").

In conclusion, the Court finds: (1) that Grievance No. 276-10-22 exhausted Plaintiff's administrative remedies as to his instant claim against Defendants; and (2) Plaintiff exhausted all administrative remedies available to him regarding Grievance No. 207-10-22, which also identified Plaintiff's claim and Defendants. Consequently, Defendants' Motion for Summary Judgment on the Issue of Exhaustion is DENIED (Doc. 28). Accordingly, this action is now moving beyond the exhaustion of administrative remedies phase. The stay on merits-based discovery is **LIFTED** and the parties can proceed with discovery on the merits. A new schedule will be entered by separate order.

### CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is DENIED (Doc. 28).

**IT IS SO ORDERED.**

**DATED:  August 13, 2025**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

---

[11] To be fair, Mr. Olson states that the grievance does not mention Defendants Jones or Jackson by name (Doc. 28-2 at p. 4). However, Mr. Olson also concedes that Grievance No. 207-10-22 concerned the Adjustment Committee hearings (*Id.*). And tellingly, the hearing reports readily identify Defendants Jackson, Jones, and Schoenbeck as the members of the Adjustment Committee involved in reviewing Plaintiff's First and Second Tickets.